```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
─────────────────────────────────────────

JUNE BURTON-MANN,                        15-CV-7392 (JGK)

               Plaintiff,        MEMORANDUM OPINION AND
                                         ORDER
    - against -

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

─────────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    The plaintiff, June Burton-Mann, brings this action seeking review of a final decision by the Commissioner of Social Security ("Commissioner") that the plaintiff was not entitled to Disability Insurance Benefits ("DIB"). See 42 U.S.C. § 405(g).

    Burton-Mann filed her DIB application on December 21, 2011, alleging disability that began on April 1, 2008. A hearing determining her eligibility for benefits was held before an Administrative Law Judge ("ALJ") on April 2, 2014. The ALJ denied the application on August 22, 2014. On July 21, 2015, the Appeals Council denied the plaintiff's claim for review, making the ALJ's decision the final decision of the Commissioner. The plaintiff then brought this action appealing that decision. The plaintiff has moved for judgment on the pleadings pursuant to

1

Federal Rule of Civil Procedure 12(c), and the defendant has cross-moved for the same relief.

For the reasons explained below, the plaintiff's motion for judgment on the pleadings is **granted in part** and the defendant's cross-motion for judgment on the pleadings is **denied**.

I.

The administrative record contains the following facts relevant to this motion.

The plaintiff, born May 20, 1973, has a bachelor's degree in psychology and has completed one year toward a master's degree. Tr. 245, 424, 473. She was last employed as a child care/mental health counselor in 2008, before leaving due to symptoms of pain and depression. Tr. 473. She lives with her five children[1] and two grandchildren. Tr. 40.

On November 17, 2010, the plaintiff visited Lincoln Medical and Mental Health Center ("Lincoln Medical") complaining of a headache and blurry vision. Tr. 337. The physical examinations were normal, Tr. 334, 337, and the plaintiff was diagnosed with hypertension, Tr. 346-47.

On December 1, 2010, the plaintiff returned to Lincoln Medical for a follow-up to treat a headache and hypertension.

---

[1] The number of the plaintiff's children is not consistent throughout the record. The plaintiff at various points speaks of five or six children. See e.g., Tr. 473, 687.

Tr. 330-32. She denied having any psychiatric symptoms, including symptoms of depression and anxiety. Tr. 330. The physical examination was normal, and the doctor diagnosed unspecified essential hypertension. Tr. 330-31.

On February 21, 2012, the plaintiff complained of anxiety, depression, and fatigue to Shira Silton, a social worker at Montefiore South Bronx Health Center ("Montefiore"). Tr. 399-403. At Montefiore, nurse practitioner Annelle Taylor treated the plaintiff for depression. Tr. 423-34. Taylor examined the plaintiff variously through October 7, 2013. Tr. 423-34, 495-513, 527-33, 539-40, 542-44, 553-59, 617-46. On August 23, 2012 and October 7, 2013, the plaintiff was still being treated for depression, hypertension, and anxiety. Tr. 499-500, 620-21.

On July 10, 2012, Dr. Catherine Pelczar-Wissner conducted a consultative examination of the plaintiff. Tr. 478-81. Dr. Pelczar-Wissner diagnosed hypertension and a history of depression. Tr. 481. After the plaintiff reported activities of daily living, including cooking a few times a week, showering, and cleaning and shopping with assistance, Dr. Pelczar-Wissner opined that the plaintiff had no physical limitations but recommended that the plaintiff be examined by a psychiatrist. Tr. 479, 481.

Also on July 10, 2012, Dr. David Mahony conducted a consultative psychological examination of the plaintiff. Tr.

3

474. A mental status examination revealed depressed affect and dysthymic mood. Tr. 474-75. Dr. Mahony diagnosed major depressive disorder moderate, and opined that the plaintiff's psychiatric problems did not interfere with her ability to function on a daily basis. Tr. 475.

On July 31, 2012, Dr. R. Altmansberger, a state agency psychiatric consultant, opined that the plaintiff would have a mild restriction of the activities of daily living, and moderate limitations maintaining attention and concentration for extended periods, among other similar limitations. Tr. 60-64. Dr. Altmansberger noted that the plaintiff appeared capable of performing the basic mental functional requirements of unskilled and semi-skilled work. Tr. 60.

On December 12, 2012, Dr. Olvera Pekovic diagnosed the plaintiff with chronic lower back pain and L5-S1 radiculopathy. Tr. 603. The doctor opined that such pain often interfered with the plaintiff's attention and concentration. Tr. 604-05.

On December 13, 2012, Dr. Virginia Contreras, a psychiatrist, conducted a psychiatric intake evaluation of the plaintiff. Tr. 613-14. The plaintiff complained of a depressed mood since 2005, and received a GAF score of 45,[2] indicating

---

[2] Prior to 2013, physicians used the Global Assessment of Functioning (GAF) scale of 0 to 100 to rate a patient's psychological, social, and occupational functioning abilities. See Petrie v. Astrue, 412 F. App'x 401, 406 n.2 (2d Cir. 2011)

4

depression. Tr. 613-14. Dr. Contreras diagnosed major depressive disorder recurrent, Tr. 613, and prescribed Sertraline and Trazodone to treat the plaintiff's depression, Tr. 614. The doctor opined that the plaintiff would have poor-to-no ability in most categories pertaining to adjusting to a job. Tr. 610-11. Dr. Contreras neglected to complete a section on the evaluation form calling for a description of the medical or clinical findings supporting this assessment. Tr. 612.

On May 17, 2013, the plaintiff reported good results from her prescriptions, and Dr. Contreras added a prescription for Wellbutrin XL. Tr. 690. The plaintiff was still not at baseline.[3] Id.

On October 17, 2013, the plaintiff told Dr. Contreras that she had run out of medication in July and that she had started seeing shadows at home of people who were not there. Tr. 687. The plaintiff received a PHQ-9 score of 19 indicating moderately

---

(per curiam) (summary order); see also Berry v. Comm'r of Soc. Sec., No. 14-CV-3977 (KPF), 2015 WL 4557374, at *3 n.10 (S.D.N.Y. 2015); Reyes v. Colvin, No. 13-CV-3464, 2015 WL 872075, at *5 (S.D.N.Y. 2015) (Maas, M.J.).
[3] Baseline measurements are the patient's initial measurements taken and used in comparison with later measurements to look for changes. Definition of baseline, National Cancer Institute, http://www.cancer.gov/publications/dictionaries/cancer-terms?cdrid=467830 (last visited July 18, 2016).

severe depression,[4] and Dr. Contreras restarted her on Sertraline and Trazodone. Id.

On January 13, 2014, the plaintiff reported feeling less depressed, and Dr. Contreras noted that she was improving. Tr. 686. A mental status examination revealed the plaintiff to have a neutral affect and pleasant mood. Id. Dr. Contreras increased the Sertraline dosage and made a note to consider Wellbutrin at the next visit. Id.

On February 21, 2014, the plaintiff went to Bronx-Lebanon Hospital Center complaining of a headache, chest pain, and numbness on both sides of her face. Tr. 695. She was diagnosed with hypertension, migraines, and neurological symptoms. Tr. 698.

On May 16, 2014, Allen Health Care Services created a home health aide plan for the plaintiff, authorizing assistance three times a week for four hours a day. Tr. 734-37.

On June 18, 2014, Dr. Contreras wrote a letter stating that the plaintiff was diagnosed with Major Depression Recurrent; had symptoms of depressed mood, poor appetite and concentration, hopelessness, loss of interest, psychomotor slowing, and

---

[4] The Patient Health Questionnaire (PHQ) is a self-administered questionnaire used to diagnose the severity of a patient's depression. Guilbe v. Colvin, No. 13-CV-6725 (JPO), 2015 WL 1499473, at *5 n.8 (S.D.N.Y. 2015) (citation omitted).

generalized body pain; and was being treated with psychotropic medications. Tr. 739.

The plaintiff filed a DIB application on December 21, 2011, alleging disability that began on April 1, 2008. Tr. 14. A hearing to determine disability was held on April 2, 2014. Id. The ALJ found that the plaintiff had three severe impairments: hypertension, headaches, and depression. Tr. 16. These impairments did not satisfy or equate in severity with the listed impairments in 20 C.F.R. § 404.1520(d), 404.1525, and 404.1526. Tr. 18. Pursuant to 20 C.F.R. § 404.1520(a), the ALJ then reviewed the record to determine the plaintiff's residual functional capacity ("RFC") and found that the plaintiff could perform less than a full range of light work as defined in 20 C.F.R. § 404.1567(b). Tr. 19. The ALJ determined that the plaintiff could not perform her past relevant work as a mental health counselor. Tr. 23. After considering the testimony of a vocational expert, the ALJ determined that there were jobs that existed in significant numbers in the national economy that the plaintiff could perform. Tr. 24. The ALJ therefore determined that the plaintiff had not been under a disability from April 1, 2008 to the date of the decision. Tr. 24.

Accordingly, the ALJ denied the plaintiff's application for benefits on August 22, 2014. Tr. 25. On July 21, 2015, the Appeals Council denied the plaintiff's claim for review, making

7

the ALJ's decision the final decision of the Commissioner. Tr. 1. The plaintiff timely initiated this action on September 18, 2015. Compl. at 3.

## II.

A court may set aside a determination by the Commissioner only if it is based on legal error or is not supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (citations omitted). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted); see also Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995); Moreira v. Colvin, No. 13-CV-4850 (JGK), 2014 WL 4634296, at *3 (S.D.N.Y. Sept. 15, 2014).

A claimant seeking DIB is considered disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Moreira, 2014 WL 4634296, at *4. Remand is particularly appropriate where an ALJ has failed to develop the record

8

sufficiently and where a remand for further findings would help to assure the proper disposition of a claim. See Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir. 2004); see also Bushansky v. Comm'r of Soc. Sec., No. 13-CV-2574 (JGK), 2014 WL 4746092, at *4 (S.D.N.Y. Sept. 24, 2014).[5]

There is a five-step framework to evaluate disability claims set out in 20 C.F.R. § 404.1520(a). In essence, "if the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in [her] prior type of work, the Commissioner must find [her] disabled if there is not another type of work the claimant can do." Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (citations omitted); see also, e.g., Selian v. Astrue, 708 F.3d 409, 417–18 (2d Cir. 2013); Bushansky, 2014 WL 4746092, at *4.

The claimant must first establish a disability under the Act (the framework's first four steps). See Burgess, 537 F.3d at

---

[5] The definition of disability in Supplemental Security Income ("SSI") and DIB cases is virtually identical, as is the standard for judicial review. Consequently, cases under 42 U.S.C. § 423 (DIB) are cited interchangeably with cases under 42 U.S.C. § 1382c(a)(3)(A) (SSI). See Hankerson v. Harris, 636 F.2d 893, 895 n.2 (2d Cir. 1980); see also Villanueva v. Barnhart, No. 03-CV-9021 (JGK), 2005 WL 22846, at *5 n.5 (S.D.N.Y. Jan. 3, 2005).

9

120. If the claimant satisfies those steps, the Commissioner must establish that, given the claimant's RFC, there is still work the claimant could perform in the national economy (the framework's fifth step). See id. If a claimant cannot perform work in the national economy then the claimant is entitled to DIB. See id.; see also Bushansky, 2014 WL 4746092, at *5.

### III.

#### A.

In a proceeding to determine whether a claimant is disabled, the ALJ has an affirmative duty to develop the administrative record. See Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982) (citations omitted); see also Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history."). "This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination, and exists even when . . . the claimant is represented by counsel." Avila v. Astrue, 933 F. Supp. 2d 640, 653 (S.D.N.Y. 2013) (quoting Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996)); see also Moreira, 2014 WL 4634296, at *5. When a disability claim is based on a psychiatric illness, the ALJ's duty to develop the record is "enhanced." Camilo v. Comm'r of Soc. Sec. Admin., No. 11-CV-1345, 2013 WL

10

5692435, at *22 (S.D.N.Y. Oct. 2, 2013) (citations omitted); see also Bushansky, 2014 WL 4746092, at *5.

In particular, with respect to the treating physician records, the governing statute provides that the Commissioner "shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence . . . necessary in order to properly make" the disability determination before evaluating medical evidence obtained from any other source on a consultative basis. 42 U.S.C. § 423(d)(5)(B); see also Rosa, 168 F.3d at 79-80 (holding in a DIB case that the ALJ erred in failing to satisfy his duty to develop the record where he did not obtain further treatment records from a treating physician and other treatment sources including a physical therapist and orthopedist, before relying on the opinion of consulting physicians); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (concluding that there was a serious question as to whether the ALJ satisfied his duty to develop the record in an SSI case); Torres v. Comm'r of Soc. Sec., No. 13-CV-730 (KBF), 2014 WL 406933, at *4–5 (S.D.N.Y. Feb. 3, 2014) (holding that the ALJ failed to develop the record where he failed to follow up after asking for treatment notes and functional analysis from an identified primary treating physician); Moreira, 2014 WL 4634296, at *5.

In this case, Dr. Contreras neglected to fill in the portion of the assessment asking for a description of the plaintiff's limitations and any "medical/clinical findings that support this assessment." Tr. 612. The ALJ found this omission significant because it left the doctor's opinion about the plaintiff's physical impairments---an opinion allegedly contradicted by the record---unsubstantiated.

Faced with this gap in the treating physician's report, the ALJ had "an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly." Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) (citations omitted); see also Rosa, 168 F.3d at 79-80 (holding that the ALJ erred by failing to seek out more records from the treating physician in light of contradictions between evidence on the record and the primary treating physician's report); Scott v. Astrue, No. 09-CV-3999, 2010 WL 2736879, at *15 (E.D.N.Y. July 9, 2010) ("By foregoing the opportunity to inquire further upon [the treating physician's] 2008 wellness report to clarify the admittedly ambiguous opinion and by rejecting [treating physician's] opinion without fully developing the factual record, the ALJ committed legal error."); Moreira, 2014 WL 4634296, at *6 (finding gaps in the record where the consultative examiner's conclusions differed from the treating physician's conclusion and physical therapy treatment

12

notes were missing). There is nothing in the record to suggest that the ALJ took any steps to remedy the lack of detailed explanation in the report by Dr. Contreras.

"When there are gaps in the administrative record . . . [the Court has], on numerous occasions, remanded to the Commissioner for further development of the evidence." Pratts, 94 F.3d at 39 (alteration omitted); see also Contreras v. Astrue, No. 11-CV-1179 (JGK), 2012 WL 2399543, at *2 (S.D.N.Y. June 26, 2012). Because the ALJ failed to satisfy her affirmative duty to develop the record, the appropriate disposition in this case is a remand to the Commissioner for further proceedings. See Johnson v. Bowen, 817 F.2d 983, 987 (2d Cir. 1987), Taveras v. Apfel, No. 97-CV-5369 (JGK), 1998 WL 557587, at *4-5 (S.D.N.Y. Sept. 2, 1998); see also Moreira, 2014 WL 4634296, at *7.

**B.**

Additionally, the ALJ erred when she accorded little weight to the opinion of treating psychiatrist Dr. Contreras.

The opinion of a claimant's treating source is evidence that an ALJ must consider when determining whether the claimant is disabled. See 20 C.F.R. § 404.1527(c)(2); see also Shaw v. Chater, 221 F.3d 126, 131-34 (2d Cir. 2000) (discussing the "treating physician rule"). Great weight is traditionally accorded to the medical opinions of the claimant's treating

13

physician. Id. at 131; see also Contreras, 2012 WL 2399543, at *2. Although often referred to as the "treating physician rule," 20 C.F.R. § 404.1502 provides that any "acceptable medical source" may be considered a treating source, psychiatrists included. See 20 C.F.R. § 404.1502; see also Comins v. Astrue, 374 F. App'x 147, 149 (2d Cir. 2010).

A treating source's opinion is due controlling weight only if it is well-supported by medically acceptable clinical and laboratory techniques and not inconsistent with substantial evidence of record. 20 C.F.R. § 404.1527(c)(2). If the opinion is not controlling, the Commissioner will give good reason for the weight it is assigned. See Avila, 933 F. Supp. 2d at 653-54; see also Shaw, 221 F.3d at 134. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Dyson v. Astrue, No. 2:09-CV-3846, 2010 WL 2640143, at *5 (E.D. Pa. June 30, 2010) (quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *4 (July 2, 1996)).

Here, the ALJ gave Dr. Contreras' opinion little weight for two reasons. First, Dr. Contreras' medical source statement was completed during the plaintiff's initial visit with Dr. Contreras, thereby offering only limited insight into the claimant's condition at the time. Second, the doctor's treatment notes indicate unremarkable mental examination results and no

14

significant psychiatric symptoms, thus inadequately supporting the doctor's opinion that the plaintiff suffered from significant limitations. Tr. 23.

Neither of these reasons supports the ALJ's decision to give the treating source's opinion limited weight. While Dr. Contreras' initial mental examination did not reveal significant psychiatric symptoms, the record contains treatment notes from 2013 and 2014 that support Dr. Contreras' opinion that the plaintiff suffers from Major Depression Recurrent and resulting significant limitations. In May 2013, Dr. Contreras added a third medication on top of the plaintiff's existing two prescriptions. Tr. 690. In October 2013, the plaintiff was put back on medication after a period off, and she received a PHQ-9 score of 19, indicating moderately severe depression. Tr. 687. In May 2014, the plaintiff was authorized a home health care worker to assist with her daily activities three times a week. Tr. 734-37. The plaintiff continued to be treated by Dr. Contreras until at least June 18, 2014.

The plaintiff's continued complaints also support Dr. Contreras' opinion that the plaintiff suffered from significant limitations. In October 2013, the plaintiff reported seeing shadows at home of people who were not there. Tr. 687. In February 2014, the plaintiff went to the hospital and was diagnosed with hypertension, migraines, and neurological

15

symptoms. Tr. 698. In April 2014, at the hearing before the ALJ, the plaintiff testified to not getting up out of bed two to three days a week, feeling too anxious to go outside, and taking medication that was only marginally effective. Tr. 40-43.

The ALJ did not fairly represent Dr. Contreras' notes. The ALJ mentioned a January 2014 note that the claimant was "improving," Tr. 23, but the ALJ failed to include other pertinent information from the same examination: the plaintiff's current dosage of medication was increased, an additional medication was to be considered, and while the plaintiff felt less depressed, she lacked energy. Tr. 686. The ALJ portrays Dr. Contreras' notes and opinion as inadequate, but the information that the ALJ did not cite disputes this characterization. Moreover, an ALJ cannot use "hopeful remarks" about a plaintiff's improvement to conclude that little weight is due to a treating source. See Bauer v. Astrue, 532 F.3d 606, 609 (7th Cir. 2008) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days. . . .").

Additionally, to the extent that facts necessary for the determination of the plaintiff's disability were not provided, the ALJ had a duty to contact Dr. Contreras to develop the record further. The ALJ could not rely on the absence of notes

16

when the ALJ failed to obtain them. Accordingly, the ALJ erred by giving Dr. Contreras' opinion limited weight because of its inconsistency with the record without first attempting to resolve the inconsistencies and fill the gaps. See Bushansky, 2014 WL 4746092, at *6.

For the above reasons, Dr. Contreras' opinion should have been given substantial weight. The ALJ's determination that this treating source's opinion deserved little weight was legal error.

## IV.

The plaintiff also contends that the defendant failed to consider both the side effects of the plaintiff's medication and the totality of the plaintiff's physical and mental impairments when making the disability determination.

The Court need not reach these claims which can be considered on remand.

17

**CONCLUSION**

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit.

For the reasons explained above, the plaintiff's motion for judgment on the pleadings is **granted in part**, and the defendant's cross-motion for judgment on the pleadings is **denied**. The Commissioner's decision is **vacated** and the case is **remanded** to the Commissioner for further proceedings consistent with this opinion.

The Clerk is directed to enter judgment and to close this case.

**SO ORDERED.**

**Dated:**    **New York, New York**
              **August 13, 2016**

                                 _____/s/_____
                                      **John G. Koeltl**
                                 **United States District Judge**